STATE OF NORTH CAROLINA v. WAYNE EUGENE PRICE

No. 362A95

(Filed 11 October 1996)

**1. Homicide § 705 (NCI4th)— first-degree murder—instruction on premeditation and deliberation—error cured by felony murder verdict**

Defendant was not prejudiced by the trial court's submission to the jury of the charge of first-degree murder based on premeditation and deliberation where the jury found defendant guilty only on the theory of felony murder.

**Am Jur 2d, Homicide § 501.**

**Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

**2. Homicide § 262 (NCI4th)— assault on one victim—shooting of second victim—continuous transaction—submission of felony murder**

A felonious assault on one victim occurred during the same series of events as the shooting of a second victim and had a causal relationship with the shooting so that the trial court did not err in submitting to the jury the charge of first-degree murder of the second victim under the felony murder theory where the evidence tended to show that defendant discovered his girlfriend sitting in a car with the assault victim; defendant pulled the assault victim from the car and beat him in the head with a pistol until he was unconscious; the girlfriend was screaming for the shooting victim to come to their aid; defendant testified that when he saw the shooting victim running toward him, he held the gun in front of him and told the shooting victim to "back off"; when the shooting victim continued to approach defendant, defendant tried to jab him with the gun in the forehead to knock him down and the gun went off and killed the victim; and the girlfriend testified that the series of events occurred "pretty much boom, boom, boom."

**Am Jur 2d, Homicide § 442.**

**3. Homicide § 706 (NCI4th)— first-degree murder—failure to submit voluntary manslaughter—error cured by felony murder verdict**

The trial court's failure to submit to the jury in a first-degree murder prosecution the lesser included offense of voluntary manslaughter based on imperfect self-defense and heat of passion, if error, was harmless where the jury found defendant guilty of first-degree murder based on felony murder; the trial court submitted to the jury possible verdicts of guilty of first-degree murder based on felony murder, guilty of first-degree murder based on premeditation and deliberation, guilty of second-degree murder, or not guilty; it cannot be assumed that a jury unconvinced that defendant was guilty of second-degree murder or first-degree murder based on either felony murder or premeditation and deliberation, but loath to acquit him completely because it was convinced he was guilty of voluntary manslaughter, might choose first-degree murder rather than second-degree murder as the means of keeping him off the streets; and the jury's verdict of first-degree murder based on felony murder when it had a right to convict defendant of second-degree murder shows that the jurors were not coerced and that they were certain of defendant's guilt of the greater offense.

**Am Jur 2d, Homicide §§ 525 et seq.**

**4. Criminal Law § 707 (NCI4th); Homicide § 501 (NCI4th)— felony murder—incorrect instruction—correction by court—absence of prejudice**

In a first-degree murder prosecution wherein the trial court initially correctly instructed the jury that to convict under the felony murder rule, the State must prove that "during the commission of the felonious assault, defendant killed the victim," the trial court's omission of the phrase "during the commission of" when the court thereafter read the summary paragraph on felony murder was not prejudicial error where the court later specifically corrected the instruction when it repeated the summary paragraph in its entirety. Furthermore, the trial court did not improperly enunciate felony murder as the proper choice for the jury by giving the curative felony murder instruction. N.C.G.S. § 15A-1234(a)(2).

**Am Jur 2d, Trial §§ 1128, 1138.**

STATE v. PRICE

[344 N.C. 583 (1996)]

Homicide: presumption of deliberation and premeditation from the fact of killing. 86 ALR2d 656.

Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.

5. Criminal Law § 465 (NCI4th)— closing argument—misstatement of law—error cured by instructions

Any error in an alleged misstatement of law by the prosecutor in her closing argument to the jury was cured by the trial court's instructions on the relevant law.

Am Jur 2d, Trial §§ 640 et seq.

6. Criminal Law § 463 (NCI4th)— prosecutor's closing arguments—reasonable inferences from evidence—inconsequential deviation from evidence

In a prosecution for felony murder based on the underlying felony of assault on another victim, the prosecutor's closing arguments that scratches on defendant's gun could have occurred when defendant was striking the assault victim on the pavement and that defendant was still beating the assault victim when the murder victim came over and there was no evidence of defendant stopping the beating were reasonable inferences drawn from the evidence. Furthermore, the prosecutor's argument that, upon hitting the assault victim, defendant's gun flew twenty-five feet across the parking lot when the evidence showed that the gun traveled about ten feet was an inconsequential deviation in an immaterial aspect of the evidence which was cured by the court's instruction on the duty of the jury to rely on its own recollection of the evidence.

Am Jur 2d, Trial §§ 911, 912.

Prosecutor's reference in opening statement to matters not provable or which he does not attempt to prove as ground for relief. 16 ALR4th 810.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by Bullock, J., at the 17 April 1995 Criminal Session of Superior Court, Wake County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 8 April 1996.

*Michael F. Easley, Attorney General, by Daniel F. McLawhorn and Thomas F. Moffitt, Special Deputy Attorneys General, for the State.*

*DeMent, Askew, Gammon, Mueller & DeMent, by Russell W. DeMent, Jr., and Angela L. DeMent, for defendant-appellant.*

ORR, Justice.

The evidence at trial tended to show that on 25 March 1994, defendant drove to the parking lot of Chi-Chi's restaurant in Cary to have a drink with his girlfriend, Gayle Miller, when she finished working at Chi-Chi's. When he arrived at the restaurant's parking lot, defendant saw Ms. Miller in her car with another man, Christopher Hearn. Defendant drove to the home where he and Ms. Miller both resided and waited for Ms. Miller for about an hour. When she did not arrive, he went back to look for her and found her in the Chi-Chi's parking lot, still in her car with Mr. Hearn.

Defendant became angry and pulled Mr. Hearn out of the car while pointing a pistol at him. He proceeded to beat Mr. Hearn on the head with the pistol until he was unconscious. While defendant was beating Mr. Hearn, Ms. Miller was screaming for Hearn's friend, Phil Hafer, to come to their aid. Mr. Hafer had been waiting nearby in Mr. Hearn's car.

Defendant's gun slipped from his hand during his last blow to Mr. Hearn. As he stepped back from Mr. Hearn, defendant saw Mr. Hafer already running towards him across the parking lot. Defendant picked up his gun, took a "couple steps" back towards Ms. Miller's car, held the gun up in front of him, and told Mr. Hafer to "back off." Defendant testified that when Mr. Hafer continued to approach him, defendant tried to "jab him with the gun in the forehead" to knock him down. The gun went off, killing Mr. Hafer. Ms. Miller testified that the series of events occurred "pretty much boom, boom, boom." Defendant jumped into his car and drove away. He later turned himself in to Cary police.

After careful consideration of the assignments of error brought forward by defendant, we hold that defendant received a fair trial, free from prejudicial error.

## I.

[1] Defendant contends that the trial court erred in submitting to the jury the charge of first-degree murder under the theory of premedita-

tion and deliberation because the evidence was insufficient to support such a charge. Assuming, without deciding, that the trial court erred in submitting the charge of first-degree murder based on premeditation and deliberation, defendant could not have suffered prejudice as a result. The jury declined to find defendant guilty of first-degree murder on the theory of premeditation and deliberation; the jury found defendant guilty of first-degree murder only on the theory of felony murder.

"Where the jury has rejected an erroneously submitted charge, the error is rendered harmless." *State v. Green*, 321 N.C. 594, 606, 365 S.E.2d 587, 594 (defendant could have suffered no prejudice if evidence of armed robbery had been insufficient to support the submission of the felony-murder theory to the jury because the jury declined to find the defendant guilty of any charges grounded on a felony-murder theory), *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988); *see also State v. Olson*, 330 N.C. 557, 566, 411 S.E.2d 592, 596 (1992) (even if evidence of armed robbery had been insufficient to support submission of felony-murder theory, prejudicial error would not have resulted because the jury found defendant guilty of first-degree murder only on the theory of premeditation and deliberation and did not find defendant guilty of any charges based on a felony-murder theory); *cf. State v. Bates*, 309 N.C. 528, 537, 308 S.E.2d 258, 264 (1983) (error in the admission of certain evidence was not prejudicial because the evidence clearly related only to the issue of premeditation and deliberation and the jury rejected this theory, convicting defendant of first-degree murder only on the theory of felony murder). Because defendant could not have been prejudiced by the court's submission of first-degree murder on the theory of premeditation and deliberation, this assignment of error is overruled.

## II.

[2] Defendant next contends that the trial court erred in submitting to the jury the charge of first-degree murder under the felony-murder theory. Defendant argues that the evidence did not show a sufficient relationship between the assault on Mr. Hearn and the shooting of Mr. Hafer to support the submission of felony murder. We disagree.

"In passing upon a defendant's motion to dismiss, the court must consider the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference." *State v. Aikens*, 342 N.C. 567, 573, 467 S.E.2d 99, 103 (1996). Viewed in the light most favorable to the State, the evidence showed a sufficient relationship

between the assault on Mr. Hearn and the shooting of Mr. Hafer to support the submission of first-degree murder under the felony-murder theory. N.C.G.S. § 14-17 provides: "A murder . . . which shall be committed in the perpetration or attempted perpetration of any . . . felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree." Death caused by the unintentional discharge of a gun in the hands of a person engaged in the perpetration of a felony within the meaning of N.C.G.S. § 14-17 is murder in the first degree. *State v. Woods*, 316 N.C. 344, 348-49, 341 S.E.2d 545, 548 (1986). Defendant pled guilty to assault with a deadly weapon inflicting serious injury—a felony within the meaning of N.C.G.S. § 14-17. In *State ·v. Hutchins*, 303 N.C. 321, 345, 279 S.E.2d 788, 803 (1981), we stated the test for whether the felony and the murder are so sufficiently related as to invoke the felony-murder rule:

> A killing is committed in the perpetration or attempted perpetration of a felony for purposes of the felony murder rule where there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is part of a series of incidents which form one continuous transaction.

Defendant argues that there is no interrelation or connection between the assault on Mr. Hearn with a deadly weapon and the shooting of Mr. Hafer and that defendant's interaction with Mr. Hafer did not commence until the beating of Mr. Hearn was completely over. We conclude that the evidence viewed in the light most favorable to the State shows that the felony and the murder are interrelated parts of a series of events that formed one continuous transaction.

The evidence shows that while defendant was beating Mr. Hearn, Ms. Miller was screaming for Hearn's friend, Mr. Hafer, to come to their aid. Defendant himself testified that the gun slipped from his hand while he was attempting to hit Mr. Hearn with the gun. As he stepped back from Mr. Hearn, he saw Mr. Hafer already running towards him across the parking lot. Defendant picked up his gun, took a "couple steps" back towards Ms. Miller's car, held the gun up in front of him, and told Mr. Hafer to "back off." Defendant testified that when Mr. Hafer continued to approach him, defendant tried to "jab him with the gun in the forehead" to knock him down. The gun went off, killing Mr. Hafer. Ms. Miller testified that the series of events occurred "pretty much boom, boom, boom."

Under these facts, we find no merit in defendant's argument. This evidence clearly shows that the assault on Mr. Hearn not only occurred during the same series of events as the shooting of Mr. Hafer, but actually had a causal relationship with the shooting. Therefore, the trial court did not err in submitting to the jury the charge of first-degree murder under the felony-murder theory.

## III.

[3] Defendant also contends that the trial court erred in failing to submit to the jury an instruction on voluntary manslaughter as a lesser included offense. A defendant is entitled to have the jury consider all lesser included offenses supported by the indictment and raised by the evidence. *State v. Thomas*, 325 N.C. 583, 591, 386 S.E.2d 555, 559-60 (1989) (citing N.C.G.S. § 15-170 (1983)). Voluntary manslaughter is a lesser included offense supported by an indictment charging murder in the first degree. *State v. Camacho*, 337 N.C. 224, 232, 446 S.E.2d 8, 12 (1994). Defendant argues that his requested instruction on voluntary manslaughter was proper based on the theories of imperfect self-defense and heat of passion. Assuming *arguendo* that the evidence supported submission of voluntary manslaughter, we hold that the court's failure to submit the charge was harmless under the facts of this case.

Our law states that when the court improperly fails to submit a lesser included offense of the offense charged, and the jury had only two options in reaching a verdict—guilty of the offense charged and not guilty—then a verdict of guilty of the offense charged is not reliable, and a new trial must be granted. *E.g.*, *id.* at 234-35, 446 S.E.2d at 13-14; *State v. Thomas*, 325 N.C. at 599, 386 S.E.2d at 564; *State v. Davis*, 242 N.C. 476, 478, 87 S.E.2d 906, 908 (1955), *overruled on other grounds by State v. Hurst*, 320 N.C. 589, 359 S.E.2d 776 (1987). In *State v. Thomas*, where the court improperly failed to submit involuntary manslaughter, the jury was given two options: guilty of first-degree murder based on felony murder and not guilty. The jury found the defendant guilty of first-degree murder based on felony murder. This Court ordered a new trial. The decision was based on the following reasoning:

in a case in which "one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction" despite the existing doubt, because "the jury was presented

with only two options: convicting the defendant . . . or acquitting him outright."

*State v. Thomas,* 325 N.C. at 599, 386 S.E.2d at 564 (quoting *Keeble v. United States,* 412 U.S. 205, 212-13, 36 L. Ed. 2d 844, 850 (1973)) (emphasis in original); *see also Beck v. Alabama,* 447 U.S. 625, 65 L. Ed. 2d 392 (1980).

However, the reasoning explained in *Keeble v. United States,* and relied on in *State v. Thomas,* is not applicable to the facts of this case. Here, defendant was convicted of first-degree murder based on felony murder following submission by the court of four options for the jury to consider: (1) guilty of first-degree murder based on felony murder, (2) guilty of first-degree murder based on premeditation and deliberation, (3) guilty of second-degree murder, or (4) not guilty.

This Court has adopted the rule that when the trial court submits to the jury the possible verdicts of first-degree murder based on premeditation and deliberation, second-degree murder, and not guilty, a verdict of first-degree murder based on premeditation and deliberation renders harmless the trial court's improper failure to submit voluntary or involuntary manslaughter. *E.g., State v. Young,* 324 N.C. 489, 492-94, 380 S.E.2d 94, 96-97 (1989) (expressly disavowing prior decisions of this Court stating otherwise). Our case law has explained two different rationales for this rule. *Compare id.* at 492-94, 380 S.E.2d at 96-97, *with State v. Judge,* 308 N.C. 658, 664-65, 303 S.E.2d 817, 821-22 (1983). One rationale is that in finding the defendant guilty beyond a reasonable doubt of first-degree murder based on premeditation and deliberation and rejecting second-degree murder, the jury necessarily rejected, beyond a reasonable doubt, the possibilities that the defendant acted in the heat of passion or in imperfect self-defense (voluntary manslaughter) or that the killing was unintentional (involuntary manslaughter). *See State v. Young,* 324 N.C. at 492-94, 380 S.E.2d at 96-97; *State v. Bush,* 307 N.C. 152, 164-65, 297 S.E.2d 563, 571 (1982). This rationale is not directly applicable to the case at bar, where the jury rejected the verdict of first-degree murder based on premeditation and deliberation. However, the second rationale is applicable to the case at bar.

The second rationale has been explained as follows:

"A verdict of murder in the first degree shows clearly that the jurors were not coerced, for they had the right to convict in the second degree. That they did not indicates their certainty of his

guilt of the greater offense. The failure to instruct them that they could convict of manslaughter therefore could not have harmed the defendant."

*State v. Judge,* 308 N.C. at 664-65, 303 S.E.2d at 821-22 (quoting *State v. Freeman,* 275 N.C. 662, 668, 170 S.E.2d 461, 465 (1969)). This rationale focuses on the United States Supreme Court's concern in *Keeble* that a jury should not be coerced into a verdict because of a lack of a lesser included offense alternative which better fits the evidence. The United States Supreme Court applied this rationale in *Schad v. Arizona,* 501 U.S. 624, 115 L. Ed. 2d 555 (1991), which is analogous to the case at bar.

In *Schad,* the prosecutor advanced the theories of felony murder and premeditation and deliberation. The trial court charged the jury on first-degree murder (Arizona characterized first-degree murder as a single crime as to which a jury need not agree on one of the alternative statutory theories of premeditated or felony murder), second-degree murder, and not guilty. The court refused the defendant's request for an instruction on robbery as a lesser included offense of felony murder. The jury convicted defendant of first-degree murder. On appeal, the defendant argued that "if the jurors had accepted his theory, they would have thought him guilty of robbery and innocent of murder, but would have been unable to return a verdict that expressed that view." *Id.* at 647-48, 115 L. Ed. 2d at 575. Therefore, according to defendant, the verdict was unreliable because the jurors were not given the opportunity to return a verdict in conformity with that reasonable view of the evidence. The United States Supreme Court rejected this argument based on the following reasoning:

> The argument is unavailing, because the fact that the jury's "third option" was second-degree murder rather than robbery does not diminish the reliability of the jury's capital murder verdict. To accept the contention advanced by petitioner and the dissent, we would have to assume that a jury unconvinced that petitioner was guilty of either capital or second-degree murder, but loath to acquit him completely (because it was convinced he was guilty of robbery), might choose capital murder rather than second-degree murder as its means of keeping him off the streets. Because we can see no basis to assume such irrationality, we are satisfied that the second-degree murder instruction in this case sufficed to ensure the verdict's reliability.

*Id.*

We believe that the reasoning of *Schad* applies to the case at bar. We cannot assume that a jury unconvinced that defendant was guilty of second-degree murder or of first-degree murder based on either felony murder or premeditation and deliberation, but loath to acquit him completely (because it was convinced he was guilty of voluntary manslaughter), might choose first-degree murder rather than second-degree murder as its means of keeping him off the streets. We recognize that in *Schad*, first-degree murder was a capital offense, whereas the case at bar was not capitally tried. However, we believe a jury still would recognize that first-degree murder is a more serious offense than second-degree murder.

Therefore, we conclude that the verdict of first-degree murder based on felony murder shows clearly that the jurors were not coerced, for they had the right to convict defendant of second-degree murder. That they did not indicates their certainty of his guilt of the greater offense. The failure to instruct them that they could convict of voluntary manslaughter therefore could not have harmed the defendant. This assignment of error is overruled.

## IV.

[4] Defendant next assigns error to the trial court's instructions to the jury on first-degree murder under the felony-murder theory. When the judge listed the elements of felony murder, he correctly instructed the jury that to convict defendant under the felony-murder rule, the State must prove that "during the commission of the felonious assault, defendant killed the victim." However, when the judge read the summary paragraph on felony murder, he omitted the phrase "during the commission of." In accordance with defendant's request, the judge later corrected the instruction by correctly repeating to the jury the summary paragraph in its entirety. Defendant argues that both the initial error and the later correction constituted prejudicial error. We disagree.

In arguing that the initial error was prejudicial, defendant relies on *State v. Cousins*, 289 N.C. 540, 549, 223 S.E.2d 338, 344 (1976), in which this Court held that "when the court charges correctly at one point and incorrectly at another, a new trial is necessary because the jury may have acted upon the incorrect part." However, the facts of the case at bar differ from those of *Cousins* because the instructions in the case at bar not only contained a correct and an incorrect instruction, but the judge also gave another correct instruction in

which he told the jury that he was correcting the earlier instruction. "[W]hen a trial judge makes an improper instruction earlier in the charge and then corrects it, the error is 'completely lacking in prejudicial effect.'" *State v. Reid,* 335 N.C. 647, 667, 440 S.E.2d 776, 787 (1994) (quoting *State v. Wells,* 290 N.C. 485, 498, 226 S.E.2d 325, 334 (1976)); *see also State v. Bromfield,* 332 N.C. 24, 45, 418 S.E.2d 491, 502-03 (1992). Therefore, defendant was not prejudiced by the trial judge's omission of the phrase "during the commission of" in the initial instruction because the judge later specifically corrected the instruction.

Defendant also argues that by giving the additional, curative felony-murder instruction, the judge erroneously enunciated felony murder as the proper choice for the jury. Defendant cites no case in which we have held that a trial court's correction of an erroneous instruction constituted prejudicial error because it enunciated the subject matter of the instruction as the proper verdict. In fact, N.C.G.S. § 15A-1234(a)(2) approves of the practice, providing: "After the jury retires for deliberation, the judge may give appropriate additional instructions to . . . [c]orrect or withdraw an erroneous instruction." After reviewing the instructions in their entirety, we conclude that the jury was correctly instructed on how to apply the law to the facts of the case. "Jurors are presumed to follow the instructions given to them by the court." *State v. Johnson,* 341 N.C. 104, 115, 459 S.E.2d 246, 252 (1995). We hold that the court's correction of the felony-murder instruction did not prejudice defendant. This assignment of error is overruled.

## V.

Defendant finally contends that the trial court erred by failing to declare a mistrial based upon alleged prosecutorial misconduct. Defendant argues that the prosecutor intentionally misstated the evidence in her closing argument. However, the closing arguments to the jury were not recorded. Therefore, the record before us includes neither a transcript of the arguments nor a record of the specific objections made by defense counsel during the arguments. "The appellate courts can judicially know only what appears of record." *Jackson v. Housing Auth. of High Point,* 321 N.C. 584, 586, 364 S.E.2d 416, 417 (1988).

This Court's review on appeal is limited to what is in the record or in the designated verbatim transcript of proceedings. [N.C. R. App. P. 9(a).] An appellate court cannot assume or speculate that

there was prejudicial error when none appears on the record before it. *State v. Alston*, 307 N.C. 321, 298 S.E.2d 631 (1983).

*State v. Moore*, 75 N.C. App. 543, 548, 331 S.E.2d 251, 254, *disc. rev. denied*, 315 N.C. 188, 337 S.E.2d 862 (1985).

Although the closing arguments were not recorded, the record does include a transcript of defendant's motion for a mistrial and the ensuing discussion on the motion, in the absence of the jury, among the trial judge and counsel for defendant and for the State. During this discussion, defense counsel attempted to reconstruct the portions of the prosecutor's closing argument that were related to the motion for a mistrial. Assuming, *arguendo*, that defense counsel's attempted reconstruction was accurate, we find no error in the trial judge's denial of the motion for a mistrial.

The record reveals no evidence of intentional misstatements by the prosecutor, nor can any improper intent be presumed simply by virtue of an alleged misstatement by counsel arguing to the jury. Defendant specifically alleges one misstatement of law and three misstatements of evidence by the prosecutor. A review of the transcript before us reveals that even if the prosecutor made the statements alleged by defendant, they fell within the wide latitude allowed to counsel in jury argument. "We have frequently held that counsel must be allowed wide latitude in jury arguments in hotly contested cases. Counsel may argue the facts in evidence *and all reasonable inferences* that may be drawn therefrom together with the relevant law in presenting the case." *State v. Anderson*, 322 N.C. 22, 37, 366 S.E.2d 459, 468 (emphasis added) (citations omitted), *cert. denied*, 488 U.S. 975, 102 L. Ed. 2d 548 (1988).

**[5]** If the alleged misstatement of law was made, it was cured by the trial court's correct jury instructions on the relevant law. *See id.* at 38, 366 S.E.2d at 469; *State v. Gladden*, 315 N.C. 398, 426, 340 S.E.2d 673, 690-91, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986); *State v. Harris*, 290 N.C. 681, 695-96, 228 S.E.2d 437, 445 (1976).

**[6]** All of the factual statements alleged by defendant were either clearly reasonable inferences drawn from the evidence or inconsequential deviations in immaterial aspects of the evidence. Defendant first claims that the prosecutor stated that the scratches on the gun could have occurred when defendant was striking Mr. Hearn on the pavement. In fact, defendant testified that the scratches were not on the gun before the night that the crimes occurred and that he saw the

scratches when he was cleaning the blood off of the gun after the crimes occurred. This testimony clearly supports an inference that the scratches on the gun could have occurred when defendant was striking Mr. Hearn on the pavement.

Defendant also claims that the prosecutor stated that defendant was still beating Mr. Hearn when Mr. Hafer came over and that there was no evidence of defendant stopping the beating. Defendant testified that his gun slipped from his hand while he was attempting to hit Mr. Hearn with the gun. As he stepped back from Mr. Hearn, he saw Mr. Hafer already running towards him across the parking lot. This testimony supports an inference that defendant was still beating Mr. Hearn when Mr. Hafer began his approach. Even defendant's testimony supports an inference that defendant would not have stopped the beating if Mr. Hafer had not intervened. Defendant testified that he stopped the beating because he thought Mr. Hearn was "pretty well incapacitated at that point." Thus, it is reasonable to infer that had Mr. Hearn moved again, defendant would have continued to beat him.

Defendant also claims that the prosecutor stated that upon hitting Mr. Hearn, defendant's gun flew twenty-five feet across the parking lot. Defendant testified that the gun travelled about ten feet. Although we find no evidence that the gun travelled exactly twenty-five feet, we consider this to be an inconsequential deviation in an immaterial aspect of the evidence. This inconsequential deviation as well as any other immaterial discrepancy in either the prosecutor's or the defense counsel's version of events was cured by the court's following jury instruction:

> Now, members of the jury, you've heard the evidence and the arguments of counsel for the State and for the defendant. The Court has not summarized the evidence in this case. It is your duty to remember the evidence, whether it's been called to your attention or not, and if your recollection of the evidence differs from that of the District Attorney or of the defense attorney, you are to rely solely upon your recollection of the evidence in your deliberations.

> I wish to emphasize this. Therefore, I'm going to repeat it to you again.

> If your recollection of the evidence differs from that of the District Attorney or of the defense attorney, you are to rely solely upon your recollection of the evidence in your deliberations.

This instruction was sufficient in this case to cure any alleged misstatement by the prosecutor. *Cf. State v. Wilson*, 322 N.C. 117, 141, 367 S.E.2d 589, 603 (1988) (trial judge's misstatement of the evidence was not prejudicial where judge instructed the jury that "[i]f your recollection of the evidence differs from mine or the attorneys in their speeches to you, you are to rely solely on your recollection of the evidence in your deliberations").

"The decision whether to order a mistrial lies within the discretion of the trial judge, to be exercised upon the happening of some prejudicial event rendering a fair and impartial trial impossible." *State v. Robinson*, 327 N.C. 346, 359, 395 S.E.2d 402, 410 (1990). Because the alleged statements fell within the wide latitude allowed counsel in closing argument and the curative instructions cured any misstatements, we find no basis for a conclusion that a fair and impartial trial was rendered impossible. Therefore, we hold that the trial court did not abuse its discretion in declining to grant a mistrial. This assignment of error is overruled.

For the foregoing reasons, we hold that defendant received a fair trial, free from prejudicial error.

NO ERROR.