STATE OF NORTH CAROLINA, Plaintiff v. IAN AULDEN CAMPBELL, Defendant

No. COA05-942

(Filed 16 May 2006)

**1. Constitutional Law— effective assistance of counsel—trial strategy—telling jury defendant repeatedly lied to his attorneys**

Defendant did not receive ineffective assistance of counsel in a first-degree murder case based on his attorney telling the jury that defendant had repeatedly lied to his attorneys, because: (1) counsel's decision to address defendant's repeated lies was a prudent step in pulling the sting from damaging evidence; (2) any

prosecution of defendant would include his lies as incriminating evidence, including their use as evidence against his truthfulness; (3) defense counsel was attempting to turn defendant's lies into a favorable fact by showing that he was merely guilty of a lesser-included crime without premeditation or deliberation; (4) when defendant took the stand and admitted, in both direct and cross-examination, that he had lied to his attorneys, defendant himself participated in this defense strategy and thus cannot complain that defense counsel utilized the strategy in closing argument; and (5) although it is possible other counsel may have proceeded with a different strategy, it cannot be concluded that the strategy employed by defendant's counsel was unreasonable or deficient.

**2. Evidence— privileged communications—attorney-client privilege—waiver**

Although defendant contends defense counsel breached the attorney-client privilege in a first-degree murder case by telling the jury that defendant had lied to his attorneys, he waived any such privilege because he admitted he lied to his attorneys in both his direct and cross-examination at trial.

**3. Criminal Law— prosecutor's argument—alleged improper shift of burden of proof to defendant**

The trial court did not abuse its discretion in a first-degree murder case by concluding that the prosecutor did not improperly shift the burden of proof to defendant during closing arguments, because: (1) the determination of whether the remarks were improper during closing arguments is not reached if the trial court's correct jury instructions on the law cured any mistakes made in the prosecutor's closing argument; and (2) when instructing the jury on first-degree murder, second-degree murder, and voluntary manslaughter, the trial court repeatedly told the jury that the State bore the burden of proof to prove each element necessary for conviction of the crime charged and each lesser offense.

Appeal by defendant from judgment entered 13 June 2003 by Judge W. Osmond Smith in Wake County Superior Court. Heard in the Court of Appeals 10 April 2006.

*Roy Cooper, Attorney General, by Amy C. Kunstling, Assistant Attorney General, for the State.*

*Glover & Petersen, P.A., by Ann B. Petersen, for Defendant-Appellant.*

MARTIN, Chief Judge.

Ian Aulden Campbell ("defendant") appeals from a judgment entered on a jury verdict finding him guilty of first degree murder. Defendant was sentenced to life imprisonment without parole. On appeal, defendant makes two arguments. First, defendant claims he received ineffective assistance of counsel at trial because his attorney informed the jury that defendant had initially lied to everyone, including his attorneys, regarding his involvement in the victim's death. Second, defendant argues the prosecution impermissibly shifted the burden of proof to defendant during closing arguments. We find no error.

The facts of this case are not in dispute, and we provide only those facts pertinent to resolution of the issues on appeal. Defendant killed his fiancée, Heather Domenie, on the night of 25 July 2002. Defendant had been having an affair with another woman, and he argued with Domenie about his affair on the night of her death. The fight escalated, and defendant grabbed the towel around her neck and strangled her. According to the medical examiners, Domenie died from asphyxia due to strangulation.

After some time passed, defendant called the 911 emergency center, claiming his fiancée had choked herself with a tea towel and was not breathing. When the first responders arrived, he told them Domenie apparently had choked while he had been on an errand to the store. Shortly thereafter, defendant called two friends, and when they arrived, he told them Domenie had choked herself with a tea towel.

Defendant continued to give this account of Domenie's death to everyone with whom he spoke about the matter, including the emergency room doctor, the police, his life insurance agent, his family, the woman with whom he was having an affair, and his attorneys.

The police arrested defendant on 16 August 2002. He was indicted for first degree murder, and the charge was prosecuted capitally.

In April 2003, defendant admitted to his attorneys that he had strangled Domenie. At the start of the trial, on 19 May 2003, defend-

ant filed a declaration with the court admitting "he assaulted Heather Anne Domenie on July 25, 2002 and that his assault upon her proximately caused her death." The declaration indicated a defense strategy claiming defendant was not guilty of first degree murder, but rather a lesser-included homicide with a correspondingly less culpable *mens rea*:

> The Defendant consents to his trial counsel pursuing, at trial, a course of defense which admits his assault upon Heather Anne Domenie, and plans to present evidence, including testifying in his own defense, and offering other evidence which he and his trial counsel contend will dispute the State's contention that he is guilty of First Degree Murder, but which will establish that he is guilty of a lesser-included offense of homicide other than First Degree Murder.

At trial, the defendant's counsel began his opening statement by acknowledging defendant had killed Domenie. Counsel then laid out the central issue in the case, claiming defendant did not kill Domenie "with malice or premeditation or deliberation" as the State contended, but instead had killed her "as a situational crime" without planning in advance. The defense theory of the case argued the killing "was a situational crime which resulted from a domestic situation which Ian had created, and that, as it evolved, it happened so swiftly and with such unexpected and explosive suddenness that all of his reason was suspended when he killed her." According to defense counsel, defendant's alibi was so unbelievable it demonstrated defendant had not premeditated or deliberated the killing:

> Well, Ian Campbell—and I'll give you the litany in a minute—the evidence is going to show that what he constructed to avoid getting caught and avoid getting detected and to avoid responsibility for what he had done will be, we're convinced, in your opinion, the most pathetic, miserable construct of an alibi in the history of criminal law.

Counsel then explained defendant's alibi that Domenie had "gone and choked herself with a tea towel" while he was running an errand, and told the jury that as it considered the evidence in the case they should "keep in mind how miserable it is, and pathetic, and consider that when you're deciding whether this thing was premeditated and deliberated upon, whether this killing was thought out in advance and planned."

Next, defense counsel previewed the evidence showing defendant lied to the first responders, to the police, and to his brother. Defendant kept telling the same lie, and he was "lying to everybody. Everybody. Well, it goes on for months, months and months." "Everybody" included his attorneys. Five weeks before the trial started, however, defendant broke down "under enormous pressure from his family and from his lawyers and everybody else that cares anything about him," and finally "[told] us what he did and what happened." The "pathetic" lie defendant kept telling pertained to whether defendant had the mental state for first degree murder:

> And you'll be able to judge his credibility and make a decision about whether you think that this was all the work of a planning, determined, master-mind or someone who was covering for something that—something terrible had happened to him and the pathetic efforts he made to cover it up. That will be your decision.

> And based on your determination of that will be a lead-in into your consideration of what offense of homicide Ian Campbell's guilty of.

According to the defense theory, defendant's "pathetic" lie indicated his killing of Domenie was not premeditated or deliberated, and therefore defendant was guilty of a lesser crime than first degree murder.

During the trial, defendant testified in his own defense. During direct examination, defendant admitted he had repeatedly lied:

> Q: Well, Ian, can you tell the Court and jury how you began to and why you began to pursue the matter of the correspondence and discussions with the life insurance company about Heather's policy?

> A: I was telling everybody the same lie, and my family and lawyers and people around me were believing me, . . . .

On cross examination, defendant again admitted lying to his attorneys:

> Q: You lied to all the folks from the Cary Police Department that you have talked to, right?

> A: Yes, sir, I lied to everybody that night and every time after that fact that I was questioned about that event.

Q: Okay.

A: I lied to my family, my lawyers and everybody.

In his closing argument, defense counsel returned to the theme of defendant's implausible lie. Counsel argued:

> And while we're talking about that and your determination of whether this was a premeditated and deliberated killing with motive, consider this, from a guy who is supposed to be smart and a planner and all that: If you were going to do something and plan on doing it very carefully, all the way back to buying insurance and everything else, why in the world would you put yourself in the house with your intended victim, screen every call that came in, admit no one to the house and then set yourself up as the only possible suspect? And then after all that careful planning and execution of this careful plan to eliminate this person in a premeditated and a deliberate way, then the best you could do after thinking on it all the way back to June with Ron Keever and everything else, come up with that 9-1-1 call. And the—I think we've just used the word before—pathetic explanation for what happened and the persistence afterwards, all the way up to almost the beginning of the trial, in denying that you had anything to do with this or trying to create evidence to show that you just couldn't have done it, if it was so well planned.

Counsel summarized this theme: "If it had been premeditated, don't you know the story would have been better?"

The jury found defendant guilty of first degree murder on 13 June 2003, and he was sentenced to life imprisonment without parole. Defendant appealed.

---

## I. Ineffective assistance of counsel

[1] Defendant argues he received ineffective assistance of counsel because his attorney told the jury that defendant had repeatedly lied to his attorneys. Our review of ineffective assistance of counsel claims "will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). Here, the cold record from the trial transcript shows no further investigation is required for our review.

When making an ineffective assistance of counsel claim, defendant must show (1) counsel's performance was deficient, with errors so serious that the attorney was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment, and (2) the deficient performance prejudiced the defense to the extent there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different and defendant was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 80 L. Ed. 2d 674, 693, 698 (1984); *State v. Braswell*, 312 N.C. 553, 561-63, 324 S.E.2d 241, 247-48 (1985) (expressly adopting the *Strickland v. Washington* test). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698; *accord Braswell*, 312 N.C. at 563, 324 S.E.2d at 248. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 80 L. Ed. 2d at 693; *see also Braswell*, 312 N.C. at 563, 324 S.E.2d at 248-49.

The United States Supreme Court requires our restraint in second-guessing strategic decisions made by attorneys:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689-90, 80 L. Ed. 2d at 694-95 (citations omitted). "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the

facts of the particular case, viewed as of the time of counsel's con-duct." *Id.* at 690, 80 L. Ed. 2d at 695.

Defendant argues his counsel was deficient because his attorney shared with the jury the fact he lied to his defense counsel. He claims "no possible trial strategy could be served" by telling the jury he lied to his attorneys, and there was "simply no tactical reason that would justify an attorney affirmatively putting before a jury in a criminal case evidence that a client had lied to the attorney repeatedly about his guilt or about his version of the events." We disagree.

In our "highly deferential" review of defense counsel's conduct in this case, *Strickland*, 466 U.S. at 689-90, 80 L. Ed. 2d at 694-95, we view counsel's decision to address defendant's repeated lies as a pru-dent step in pulling the sting from damaging evidence. Defendant had lied to everyone, including family, friends, the police, and medical personnel. His claim that the victim had strangled herself was suspi-cious from the start. Such a lie, repeated to everyone, indicated defendant sought to protect himself from liability, and therefore his lies about the circumstances of her death further incriminated him in the murder of Domenie. Any prosecution of defendant would include his lies as incriminating evidence, including their use as evidence against his truthfulness.

Since defense counsel knew defendant's lies would be an issue at trial, counsel attempted to turn defendant's lies into a favorable fact. Defense counsel was seeking to have defendant acquitted of first degree murder, and instead have defendant found guilty of a lesser-included crime such as second degree murder or voluntary manslaughter. Their hope of doing so relied on showing defendant had a less culpable mental state than premeditation or deliberation, a strategy apparent as early as defendant's 19 May 2003 declaration before trial admitting he had killed Domenie. Hence, defense counsel argued that if defendant had premeditated or deliberated Domenie's murder, he would have produced a more credible alibi than the "pathetic" one he continually provided. As counsel summarized in closing argument, "If it had been premeditated, don't you know the story would have been better?" Even the State acknowledges on appeal these arguments by defense counsel reflected a reasonable and shrewd defense strategy.

Although defense counsel noted in opening argument that defendant had lied to his attorneys, just as he had lied to everyone else, under the facts of this case we do not hold such an admission to

be deficient performance by counsel. The theme counsel was arguing indicated defendant had a pattern of lying to everyone about the circumstances of Domenie's death, and acknowledging that "everyone" included his attorneys did not exacerbate the incriminating aspect of defendant seeking to escape liability via his lies. Defense counsel's mention in the opening statement that defendant had lied to his attorneys was incidental to this theme; if anything, it merely served to further illustrate counsel's intended theme. When defendant took the stand and admitted, in both direct and cross-examination, he had lied to his attorneys, defendant himself explicitly participated in this defense strategy, and thereafter cannot complain that defense counsel utilized the strategy in closing argument.

Though it is possible other counsel may have proceeded with a different strategy, we cannot conclude the strategy employed by defendant's counsel was unreasonable nor, in our highly deferential review, deficient. Because we hold defense counsel's performance was not deficient, we need not address whether such performance prejudiced the defense and deprived defendant of a fair trial. *Id.* at 687, 80 L. Ed. 2d at 693; *see also Braswell*, 312 N.C. at 563, 324 S.E.2d at 248-49. Accordingly, we hold defendant did not receive ineffective assistance of counsel.

**[2]** Defendant also argues defense counsel breached attorney-client privilege by telling the jury he had lied to his attorneys. According to defendant, the lies defendant told his counsel were confidential communications, and those communications were "privileged and may not be disclosed." *In re Investigation of the Death of Miller*, 357 N.C. 316, 328, 584 S.E.2d 772, 782 (2003). But the privilege "belongs to the defendant, and may be waived by him." *State v. Bronson*, 333 N.C. 67, 76, 423 S.E.2d 772, 777 (1992). Since defendant admitted he lied to his attorneys in both his direct examination and cross-examination at trial, he therefore waived this privilege.

## II. Burden of proof

**[3]** Defendant claims a portion of the prosecutor's closing argument improperly shifted the burden of proof to defendant. At the end of the argument, the prosecutor said:

> The defendant has tried real hard when he testified to make his story—to make what he offered to you to fit the State's evidence that he knew we would present. He had months to do that. He is an engineer.

He knows what the State reports are. He knows what those are. He has months to do that and to come in here and be able to tell you the little things that he thinks will make his story fit.

But he wants to tell you a couple of other things, and that is that he actually did administer CPR on her. Think about whether or not that is the truth and compare that to the rest of everything that he said. Think about whether when he says when he is standing face to face to her, face to face, toe to toe, and that he doesn't remember what happened after he pulled that towel tight, that he doesn't remember that. Is that the truth? Is that really the truth? Because Dr. Radisch said that it would take more, in this case was not a four-minute thing. It was hands and a towel. The evidence shows you that it could be from behind because of the way the hairs were found on the towel and because of the way the marks are on her body and the lack of marks on his.

You will have four options: First-degree murder, second-degree murder, voluntary manslaughter and the verdict form as perhaps required by law has to have not guilty on the bottom of it.

In order for you to find the defendant guilty of voluntary manslaughter, you have to say that the emotions that were going on were so high.

In order for you to find him guilty of second-degree murder, you have to say that he did not premeditate and deliberate.

What I say to you this afternoon is that for you to find him guilty of anything less than first-degree murder, you will have to have decided for yourself individually and collectively that he has been telling the truth about what happened.

Defendant objected, which the trial court overruled. The jury was excused for lunch, and defendant renewed his objection, contending the prosecutor's argument was improper and impermissibly shifted the burden of proof from the State onto the defendant. Defendant asked the trial court to instruct the jury to that effect when they returned from lunch. The trial court declined to do so, stating it would instruct the jury regarding the burden of proof pursuant to the proposed jury instructions.

During the jury instructions, the trial court instructed the jury:

The defendant in this case has entered a plea of not guilty. The fact that he has been charged is no evidence of guilt. Under

our system of justice, when a defendant pleads not guilty he is not required to prove his innocence. He is presumed to be innocent.

The State must prove to you that the defendant is guilty beyond a reasonable doubt.

When instructing the jury on first degree murder, second degree murder, and voluntary manslaughter, the trial court repeatedly told the jury that the State bore the burden of proof to prove each element necessary for conviction of this crime charged and each lesser offense about which the jury was instructed.

When counsel makes a timely objection at trial, the standard of review for improper closing arguments is whether the trial court abused its discretion by failing to sustain the objection. *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002). We should reverse a trial court and find an abuse of discretion, however, "only upon a showing that its ruling could not have been the result of a reasoned decision." *State v. Burrus*, 344 N.C. 79, 90, 472 S.E.2d 867, 875 (1996) (citing *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)). When applying the abuse of discretion standard to closing arguments, we first determine whether the "remarks were improper," and if so, whether the "remarks were of such a magnitude that their inclusion prejudiced defendant." *Jones*, 355 N.C. at 131, 558 S.E.2d at 106.

We need not make this determination, however, if the trial court's correct jury instructions on the law cured any mistakes made in the prosecutor's closing argument. "If the alleged misstatement of law was made, it was cured by the trial court's correct jury instructions on the relevant law." *State v. Price*, 344 N.C. 583, 594, 476 S.E.2d 317, 323-24 (1996) (citing *State v. Anderson*, 322 N.C. 22, 38, 366 S.E.2d 459, 468 (1988)); *see also State v. Rose*, 339 N.C. 172, 197, 451 S.E.2d 211, 225-26 (1994) (prosecutor's error in defining the term "reasonable doubt" was cured because the trial court's instruction, "which followed the complained-of statement by the prosecutor, remedied the error, if any, in the prosecutor's closing argument"), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995); *State v. Gladden*, 315 N.C. 398, 426, 340 S.E.2d 673, 690-91 (1986) ("Subsequently, the trial judge properly instructed the jury concerning the weight to be accorded prior inconsistent statements and cured any possible prejudice to the defendant which may have been caused by the prosecutor's misstatement of the law."), *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986).

No error.

Judges HUDSON and BRYANT concur.