STATE OF NORTH CAROLINA v. TIMOTHY WAYNE JOHNSON

No. COA06-523

(Filed 6 March 2007)

## 1. Homicide— first-degree murder—felony murder—sufficiency of evidence

The trial court did not err by submitting the charge of first-degree murder on the basis of felony murder, because: (1) the evidence taken in the light most favorable to the State showed that defendant shot Harmon after he tackled defendant's brother, that immediately thereafter McCann grabbed defendant attempting to disarm him, and that defendant reached over his shoulder, placed the gun on McCann's temple, and shot him in the head; (2) contrary to defendant's contention that the intervention of McCann attempting to disarm defendant broke the sequence of events, the intervention of another is not sufficient to cause a break in the course of criminal conduct and in such circumstance a charge of felony murder is still proper; and (3) the evidence showed the shooting of Harmon not only occurred during the same series of events as the shooting of McCann, but actually had a causal relationship with the shooting.

## 2. Homicide— second-degree murder—sufficiency of evidence—imperfect self-defense

The trial court did not err by submitting the charge of second-degree murder for the death of Harmon even though defendant alleged imperfect self-defense, because: (1) the evidence showed that defendant used a deadly weapon, a gun, and intentionally shot Harmon after he tackled defendant's brother, which evidence alone is sufficient to overcome the required threshold to submit the charge of second-degree murder to the jury; (2) any evidence of imperfect self-defense goes to the jury determination of whether defendant's actions actually rose to the level of self-defense; and (3) the jury was instructed on imperfect self-defense of others, and defendant's attorney was permitted to argue such a theory to the jury.

Appeal by defendant from judgments entered 22 August 2005 by Judge W. Osmond Smith in Wake County Superior Court. Heard in the Court of Appeals 6 December 2006.

**STATE v. JOHNSON**

[182 N.C. App. 63 (2007)]

*Attorney General Roy Cooper by Assistant Attorney General Joan M. Cunningham for the State.*

*Winston & Maher, by Thomas K. Maher, for defendant appellant.*

McCULLOUGH, Judge.

Timothy Johnson ("defendant") appeals from judgments entered consistent with the jury's verdict finding him guilty of second-degree murder of Brett Harmon and first-degree murder of Kevin McCann under the felony murder rule. Defendant was sentenced to life imprisonment without parole. After a thorough review of the record, transcripts and defendant's arguments on appeal, we hold the defendant received a trial free from error, and therefore we affirm the judgments entered against him.

Defendant was indicted on 28 September 2004 on two counts of first-degree murder for the deaths of Brett Harmon ("Harmon") and Kevin McCann ("McCann"). At trial, the State's evidence tended to show:

Tony Johnson ("Tony"), defendant's brother, was driving at a high speed through the crowded tailgating area at a North Carolina State University game on 4 September 2004. As Tony sped through the area, he nearly hit several people walking through the tailgating area. The car Tony was driving was stopped due to traffic in the tailgating area and at that time, Harmon and McCann approached the vehicle. After the two approached, one of the men grabbed Tony by his hair while the other poured a beer on him. McCann and Harmon turned to walk away, but Tony exited the car and a physical confrontation ensued ending with Harmon and McCann overpowering Tony, pinning him on the ground. When Tony was let up off of the ground, he proceeded to get back into his car and sped off.

Meanwhile, defendant was tailgating with several friends a short distance from the altercation between Tony, McCann and Harmon. Tony had previously been parked at the same tailgating area as defendant and had been drinking, but left the area after becoming angered when someone threw a football which landed near him. Tony returned to the tailgate area and Chris Edge overheard Tony tell defendant, "[Y]ou weren't there." Tony explained to defendant that several guys took him out of his car and threw him on the ground to which defendant responded, "I will take care of it." Tony stated that

STATE v. JOHNSON

[182 N.C. App. 63 (2007)]

he knew where the guys were and walked away from the area where defendant was tailgating.

Edge testified that defendant began changing clothes for the game and he noticed defendant take a gun out of his waistband, place it on the seat of his car, and then replace it back in his waistband after he changed shirts. Edge heard defendant tell his girlfriend that he was going to go "take care of this" for Tony and that they would then go to the game. Tony went back to the area where Harmon and McCann were tailgating with their friends and began making inflammatory remarks towards the group. Tony was taunting Harmon and McCann with remarks such as "[w]hy don't you come over here, you now, if you want some of me" and McCann and Harmon responded with obscenities of their own. Harmon and McCann then stood from where they were sitting and began to follow Tony as he backed away from their tailgating area, still shouting obscenities.

Tony led Harmon, McCann and several of their friends back to the area where defendant was tailgating with his friends. Edge stood in between the two groups, placed his hands on Harmon's chest and asked what was going on. Someone in Harmon and McCann's group responded that "this drunk mother almost hit a little kid with his car." At this point Tony picked up a beer bottle, broke the bottle and began brandishing it at McCann and Harmon's group. Tony swung the broken bottle at Sean Mulkerrin, a friend of Harmon and McCann, and Mulkerrin backed away. Several people heard defendant tell Harmon, McCann and their friends to leave and stated that he would take care of his brother.

Tony continued to thrust the broken beer bottle into the faces of McCann and Harmon, and at one point defendant threw a beer bottle at the feet of Harmon and McCann. Defendant then lifted his shirt, pulled out the gun from the waistband of his pants and fired the gun straight up into the air. Tony once again swung the broken bottle into the face of McCann, but this time Harmon lowered his head and tackled Tony into the tailgate of a truck parked behind him. Those who witnessed the tackle described it as a "spear tackle," "football tackle," and that Harmon "put his head in [Tony's] chest and reached down and grabbed the back of [Tony's] knees and ran him into the side of a red truck." Both Tony and McCann rolled off the truck and onto the ground and at that point defendant leaned forward and shot Harmon in the chest while he was still on the ground.

**STATE v. JOHNSON**

[182 N.C. App. 63 (2007)]

Immediately after Harmon was shot, McCann lunged toward defendant and grabbed his left arm in an attempt to get the gun away from defendant. McCann was behind defendant as they spun down a small hill and his head was right over defendant's shoulder. Defendant swung his right hand up and over his left shoulder, pointed the gun directly at McCann's temple and shot him in the head. Tony and defendant then fled the area.

Defendant testified on his own behalf at trial. Defendant stated that on 4 September 2004 he headed out to a day of tailgating before the North Carolina State University football game. During the day he smoked marijuana and drank numerous beers along with several shots of liquor. Defendant admitted that Tony had become combative earlier during the day due to his drug use and left their tailgating area angrily. He further stated that Tony later returned and told defendant that two guys had pulled him out of his car, thrown him on the ground and walked on him. Tony told defendant that he knew where the guys were and defendant told Tony "I will take care of it."

Defendant denied that this statement meant he would find the guys and beat them up, but rather that he meant for Tony to calm down and then they would go into the game. Defendant stated that he did not realize Tony had gone to get the guys until Tony walked back up and stated to defendant, "[H]ere are the guys" and pointed towards Harmon, McCann and their friends.

Defendant stated that he repeatedly told Harmon, McCann and his group of friends to leave the area and told them that he would take care of Tony. He further testified that one of the members of Harmon and McCann's group stated, "We are going to f—— ya'll up." During this time, defendant testified that his gun was still in his car which was parked in the tailgating area. Defendant admitted that he threw a bottle at the feet of Harmon and McCann because it looked like they were going to charge Tony. Defendant then heard a bottle break and at that point he went to his car, grabbed his gun, chambered a round and put it in his waistband because he stated that he knew that someone in Harmon and McCann's group now had a broken bottle too. Defendant testified that he got the gun out so that he could use it to scare the other group if he needed to.

Defendant then saw Harmon tackle Tony causing Tony to hit his head on the tailgate of a red truck and the two to fall to the ground. Defendant stated that he felt as if it was just him and his brother against Harmon and his friends and that he saw blood on his brother's

leg, so he pulled out his gun, chambered another round and shot Harmon "to try to get him off [Tony]." He testified that as soon as he fired the shot, McCann grabbed him and tried to get his gun. Defendant stated that he feared McCann would kill him with his own gun, so he shot McCann.

The trial court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter, defense of others and imperfect defense of others as to the shooting of Harmon. The trial court then instructed the jury on first-degree murder on the basis of premeditation and deliberation, first-degree murder on the basis of felony-murder with the shooting of Harmon as the underlying felony, second-degree murder and voluntary manslaughter as to the shooting of McCann. The jury found defendant guilty of second-degree murder of Harmon and first-degree murder on the basis of felony murder with the murder of Harmon as the underlying felony. Defendant was sentenced to life imprisonment without parole for the first-degree murder of McCann, and the second-degree murder conviction was arrested as it served as the predicate for the felony-murder conviction.

Defendant appeals.

[1] In his first argument, defendant contends that the trial court erred in submitting the charge of first-degree murder on the basis of felony-murder where there was insufficient evidence to support such a theory. We disagree.

A motion to dismiss on the ground of sufficiency of the evidence raises for the trial court the issue "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford,* 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). The existence of substantial evidence is a question of law for the trial court, which must determine whether there is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Vause,* 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). The court must consider the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from that evidence. *Id.* at 237, 400 S.E.2d at 61. The evidence may be direct, circumstantial, or both. *State v. Locklear,* 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988).

Furthermore, "contradictions and inconsistencies do not warrant dismissal; the trial court is not to be concerned with the weight of the

evidence. Ultimately, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *State v. Lee*, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998).

A murder occurs during the " 'perpetration of a felony for purposes of the felony murder rule where there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is part of a series of incidents which form one continuous transaction.' " *State v. Trull*, 349 N.C. 428, 449, 509 S.E.2d 178, 192 (1998) (citation omitted), *cert. denied*, 528 U.S. 835, 145 L. Ed. 2d 80 (1999). To prove felony murder as well as the underlying offense, the State need only demonstrate that the elements of both " 'occur[red] in a time frame that can be perceived as a single transaction.' " *Id.* (citation omitted).

Defendant contends that the intervention of McCann attempting to disarm defendant broke the sequence of events, making the murders two events separate and distinct from one another. We are unpersuaded by the contentions of defendant.

The evidence, taken in the light most favorable to the State, tended to show that defendant shot Harmon after he tackled Tony; that immediately thereafter McCann grabbed defendant attempting to disarm him; and that defendant reached over his shoulder, placed the gun on McCann's temple and shot him in the head. Our Supreme Court in *State v. Price*, found that the intervention of another is not sufficient to cause a break in the course of criminal conduct and in such circumstances a charge of felony-murder is still proper. *State v. Price*, 344 N.C. 583, 588-89, 476 S.E.2d 317, 320 (1996).

In *State v. Price*, the defendant observed his girlfriend, Ms. Miller, in the car with another man, Mr. Hearn. The defendant became angered and pulled Mr. Hearn out of the car at gun point and began beating him with the gun. While the defendant was beating Mr. Hearn, Ms. Miller was screaming for help from Mr. Hearn's friend, Mr. Hafer, who was waiting in a nearby car. When the defendant's gun slipped out of his hand during the beating of Mr. Hearn, the defendant stepped back and realized that Mr. Hafer was approaching him. The defendant took several steps back toward Ms. Miller's car and told Mr. Hafer not to come any closer. When Mr. Hafer continued to approach, the defendant attempted to knock him down by jabbing him in the forehead with the gun, the gun went off and killed Mr. Hafer. The court found that the intervention by Mr. Hafer was not enough to cause a break in the chain of events such that the incidents

formed one continuous transaction. The court found that the trial court did not err in submitting the charge of felony-murder based on the aforementioned facts. *Id.*

Like the facts in *Price*, only a few seconds separated the shooting of Harmon and McCann. Defendant shot Harmon after he tackled his brother, Tony, and immediately thereafter shot McCann in the head when McCann grabbed him in an attempt to disarm him. It cannot be said that such intervention by McCann caused a break in the course of criminal conduct such that the incidents did not form one continuous transaction. The evidence clearly shows that the shooting of Harmon not only occurred during the same series of events as the shooting of McCann, but actually had a causal relationship with the shooting. Therefore, the trial court did not err in submitting to the jury the charge of first-degree murder under the felony-murder theory.

**[2]** Defendant further contends on appeal that the trial court erred in submitting the charge of second-degree murder for the death of Brett Harmon to the jury where there was insufficient evidence to support the charge. We disagree.

As stated, *supra*, this Court must determine whether there was substantial evidence of each essential element of the crime charged and of the defendant being the perpetrator of the crime charged such that a reasonable mind might accept as adequate to support a conclusion, and such evidence is viewed in the light most favorable to the State. *Crawford*, 344 N.C. at 73, 472 S.E.2d at 925; *Vause*, 328 N.C. at 236, 400 S.E.2d at 61; *Locklear*, 322 N.C. at 358, 368 S.E.2d at 382-83.

Second-degree murder " 'is the unlawful killing of a human being with malice but without premeditation and deliberation.' " *State v. Leazer*, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (citation omitted). "The intentional use of a deadly weapon gives rise to a presumption that the killing was unlawful and that it was done with malice." *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 388 (1984); *see also State v. Hodges*, 296 N.C. 66, 72, 249 S.E.2d 371, 374 (1978) (providing that evidence showing defendant intentionally inflicted a wound with a deadly weapon which caused death "raises inferences of an unlawful killing with malice which are sufficient [to establish] murder in the second degree"); *State v. McNeill*, 346 N.C. 233, 238, 485 S.E.2d 284, 287 (1997) (providing that "malice is presumed where the defendant intentionally assaults another with a deadly weapon, thereby causing the other's death."), *cert. denied*, 522 U.S. 1053, 139

L. Ed. 2d 647 (1998), *cert. denied*, 352 N.C. 154, 544 S.E.2d 237 (2000). Such a presumption is sufficient to withstand a motion to dismiss for insufficient evidence. *State v. Barrett*, 20 N.C. App. 419, 422, 201 S.E.2d 553, 555, *cert. denied*, 285 N.C. 86, 203 S.E.2d 58 (1974). The issue of whether the evidence is sufficient to rebut the presumption of malice in a homicide with a deadly weapon is then a jury question. *Id.* at 422-23, 201 S.E.2d at 555-56.

Defendant specifically contends that there was insufficient evidence to support a charge of second-degree murder where the State failed to prove that defendant did not act imperfectly in the defense of others. We are unpersuaded by this argument.

The elements which establish perfect self-defense are:

"(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm."

*State v. McAvoy*, 331 N.C. 583, 595, 417 S.E.2d 489, 497 (1992) (citation omitted).

As a corollary, "one may kill in defense of another if one believes it to be necessary to prevent death or great bodily harm to the other 'and has a reasonable ground for such belief, the reasonableness of this belief or apprehension to be judged by the jury in light of the facts and circumstances as they appeared to the defender at the time of the killing.' " *State v. Perry*, 338 N.C. 457, 466, 450 S.E.2d 471, 476 (1994) (citation omitted). Imperfect defense of another arises when the first two elements of self-defense are met, but either the third or fourth element cannot be established. *Id.* at 467, 450 S.E.2d at 476-77.

In the instant case, the evidence clearly shows that defendant used a deadly weapon, a gun, and intentionally shot Harmon after he tackled his brother. This evidence alone is sufficient to overcome the required threshold to submit the charge of second-degree murder to the jury. Further, any evidence of imperfect self-defense goes to the jury determination of whether defendant's actions actually rose to the level of self-defense. The jury was instructed on imperfect defense of others and defendant's attorney was permitted to argue such a theory to the jury. Where there was sufficient evidence to instruct the jury on the charge of second-degree murder, we find no error in the court's submission of the charge of second-degree murder.

Accordingly, we conclude that defendant received a trial free from error.

No error.

Chief Judge MARTIN and Judge ELMORE concur.