STATE OF NORTH CAROLINA v. DEON JERRILL McLEAN

No. COA10-601

(Filed 19 April 2011)

## 1. Assault— deadly weapon inflicting serious injury—sufficient evidence

The trial court erred as a matter of law in denying defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury. There was sufficient evidence of all elements of the crime including that the victim sustained a serious injury.

## 2. Assault— deadly weapon inflicting serious injury—jury instruction—definition of serious injury—no error

The trial court did not err as a matter of law in an assault with a deadly weapon with intent to kill inflicting serious injury case by failing to define "serious injury" in its jury instructions. Our courts have chosen not to narrowly define "serious injury" in the context of assaults, and the trial court was not required to define the term as requested by defendant.

## 3. Firearms and Other Weapons— discharging weapon into moving vehicle—jury instruction

The trial court's jury instructions in a discharging a weapon into a moving vehicle case were not erroneous. The instructions correctly stated the requisite mental intent and did not reduce the State's burden of proof to prove intent beyond a reasonable doubt.

## 4. Appeal and Error— sentencing—no appeal as of right

Defendant's argument that he was entitled to a new sentencing hearing was not addressed. Defendant was not entitled to appeal the sentencing issue as a matter of right because he would have been a prior record level II with or without the challenged sentencing point and he was sentenced in the presumptive range.

Appeal by Defendant from judgments entered 22 January 2010 by Judge Walter H. Godwin, Jr. in Wayne County Superior Court. Heard in the Court of Appeals 2 November 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Kimberley A. D'Arruda, for the State.*

*Sue Genrich Berry, for Defendant.*

BEASLEY, Judge.

Deon Jerrill McLean (Defendant) appeals from judgments entered on his convictions of one count of assault with a deadly weapon with the intent to kill inflicting serious injury, one count of assault with a deadly weapon, and one count of discharging a firearm into a moving vehicle. For the following reasons, we hold that the trial court committed no error.

On 7 July 2008, a Wayne County Grand Jury returned a six-count indictment charging Defendant with two counts of assault with a deadly weapon with intent to kill inflicting serious injury, three counts of discharging a firearm into a conveyance in motion, and one count of first degree murder. Prior to trial, the State dismissed two of the three counts of discharging a firearm into a moving vehicle. Trial on the remaining charges commenced at the 19 January 2010 Criminal Session of Wayne County Superior Court.

On 5 June 2007 Officer James Serlick with the Goldsboro Police Department received several calls in connection with this matter. He first responded to a trespassing call at Darnell's Convenient Mart and then was dispatched to a residence on Crawford Street based on a report that two people there had been shot. Upon arrival, Serlick found Jaquan Hines and Shawntana Thompson sitting on the front porch; one had been shot in the calf and the other had been shot in the foot. Both men were bleeding and were taken to the hospital. Serlick later received a call to go to the McLean's residence on East Elm Street, where he learned from one of Defendant's brothers about "some problems" between the McLean and Hines families. While there, Serlick heard loud gunshots that sounded like they came from a shotgun and from very nearby. Serlick then arrived at the scene to find Antron Hines had been shot. Antron died as a result of two shotgun wounds-one to his back and one to his left leg.

Jaquan Hines testified that on 5 June 2007, he and his brother Antron were living in Fayetteville but had ridden with Antron's girlfriend to Goldsboro. After arriving at their sister's house, Jaquan went to Darnell's, where he met his friends Antoine Pope and Shawntana Thompson. Outside the store, Jaquan "had some words" with Everette

McLean, another brother of Defendant, "about the family situation," wherein each expressed his intention to side with his own brother. Jaquan and Defendant began to fight inside the store, and after the altercation was broken up, they continued fighting outside, and additional people associated with each man joined in the affray. Jaquan saw someone give Defendant a shotgun, and Jaquan and Shawntana left running when Defendant began shooting. Jaquan was shot in the leg, and it took six months for the "[e]ighteen to 20-something" pellets to work themselves out of his body. Shawntana was shot when he ran behind a van in the store's parking lot. He then ran down the street alongside a school bus as he heard the shotgun being fired "a lot more times." Shawntana continued running onto Crawford Street, where he saw Jaquan on a porch, and an ambulance later took both men to the hospital.

Samuel McClary, a bus driver for Wayne County Public Schools, had been taking students home on 5 June 2007 and was stopped at a red light when he observed "a commotion at Darnell's" and saw Defendant with a shotgun. McClary instructed the children to get down on the floor before putting the bus in park and then getting on the floor of the bus as well. After hearing gunfire, the bus driver saw "a couple of boys that came [running] by the bus" and then looked up to see that "[D]efendant was standing there with a shotgun in his hand." Upon later inspection, McClary and a police officer discovered that seven or eight projectiles had struck the bus just below the windshield on the driver's side.

On 22 January 2010, the jury found Defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury to Jaquan Hines; guilty of the lesser included offense of assault with a deadly weapon as to Shawntana Thompson; and guilty of discharging a firearm into a moving vehicle. The trial court declared a mistrial as to the murder charge, due to the jury's inability to reach a unanimous verdict. The trial court sentenced Defendant as a prior record level II and imposed consecutive terms of 100-129 months' imprisonment for the conviction of assault with a deadly weapon with intent to kill inflicting serious injury, 75 days for the conviction of assault with a deadly weapon, and 77-102 months for the conviction of discharging a firearm into a moving vehicle. Defendant timely filed his notice of appeal.

I.

[1] Defendant argues that the trial court erred as a matter of law in denying his motion to dismiss the charge of assault with a deadly

weapon with intent to kill inflicting serious injury to Jaquan Hines on the grounds of insufficient evidence.

In reviewing a motion to dismiss which challenges the sufficiency of the evidence, "the question for this Court is whether there is substantial evidence of each essential element of the offense charged." *State v. Borkar*, 173 N.C. App. 162, 165, 617 S.E.2d 341, 343 (2005). "If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). It is the trial court's duty, when ruling on a motion to dismiss, to

> consider all the evidence admitted in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom, and it must decide whether there is substantial evidence of each element of the offense charged. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. If there is any evidence that tends to prove the fact in issue or that reasonably supports a logical and legitimate deduction as to the existence of that fact and does not merely raise a suspicion or conjecture regarding it, then it is proper to submit the case to the jury.

*State v. Pigott*, 331 N.C. 199, 207, 415 S.E.2d 555, 559-60 (1992) (internal quotation marks and citations omitted). " 'Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal.' " *State v. Parker*, 185 N.C. App. 437, 440-41, 651 S.E.2d 377, 380 (2007) (quoting *State v. King*, 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996)). "The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both[,]" and if such evidence supports "a reasonable inference of defendant's guilt," the motion to dismiss should be denied. *State v. Scott*, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002) (internal citations omitted). As a question of law, we review de novo the denial of a criminal defendant's motion to dismiss for insufficient evidence. *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007).

The essential elements of assault with a deadly weapon with intent to kill inflicting serious injury are: "(1) an assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, (5) not resulting in death." *State v. Reid*, 335 N.C. 647, 654, 440 S.E.2d 776, 780 (1994). Defendant contends that there was insufficient evidence that Jaquan Hines sustained a serious injury to support the conviction. We disagree.

Our Supreme Court "has not defined 'serious injury' for purposes of assault prosecutions, other than stating that '[t]he injury must be serious but it must fall short of causing death' and that '[f]urther definition seems neither wise nor desirable.'" *State v. Ramseur*, 338 N.C. 502, 507, 450 S.E.2d 467, 471 (1994) (quoting *State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962)). However, several relevant factors that may guide the determination of whether serious injury has been inflicted, including, but not limited to: "(1) pain and suffering; (2) loss of blood; (3) hospitalization; and (4) time lost from work." *State v. Morgan*, 164 N.C. App. 298, 303, 595 S.E.2d 804, 809 (2004) (citing *State v. Hedgepeth*, 330 N.C. 38, 53, 409 S.E.2d 309, 318 (1991)). Notably, this Court has indicated that competent evidence on any one of these factors is sufficient in itself to constitute substantial evidence of serious injury. *See Bagley*, 183 N.C. App. at 526, 644 S.E.2d at 623 ("Substantial evidence of a serious injury that is sufficient to survive a motion to dismiss includes, but is not limited to, evidence of 'hospitalization, pain, blood loss, and time lost at work.'"); *see also, e.g., State v. Joyner*, 295 N.C. 55, 65, 243 S.E.2d 367, 374 (1978) ("Evidence that the victim was hospitalized is not necessary for the proof of serious injury.").

Still, "[w]hether a serious injury has been inflicted is a factual determination within the province of the jury," *Morgan*, 164 N.C. App. at 303, 595 S.E.2d at 809, as the decision must be made on a case-by-case basis "according to the particular facts" and circumstances involved, *Jones*, 258 N.C. at 91, 128 S.E.2d at 3; *see also Ramseur*, 338 N.C. at 507, 450 S.E.2d at 471 ("Whether 'serious injury' has been inflicted must be decided on the facts of each case."). In fact, our Supreme Court has observed that

> [c]ases that have addressed the issue of the sufficiency of evidence of serious injury appear to stand for the proposition that as long as the State presents evidence that the victim sustained a physical injury as a result of an assault by the defendant, it is for the jury to determine the question of whether the injury was serious. *See Joyner*, 295 N.C. at 65, 243 S.E.2d at 374 ("there being evidence of physical or bodily injury to the victim, the question of the nature of these injuries was . . . properly submitted to the jury").

*State v. Alexander*, 337 N.C. 182, 189, 446 S.E.2d 83, 87 (1994). Defendant concedes that whether a serious injury occurred is generally a factual determination, but only where there is some evidence to support it, which he argues is lacking in this case. He emphasizes Jaquan's

"unequivocal" testimony that he did not "have [any] pain and suffering as a result of [the gunshot wounds to his leg]." Defendant also contends that Shawntana's testimony that Jaquan was bleeding "does not arise [*sic*] to the level of loss of blood." Defendant further argues that there is no evidence that Jaquan actually received care or treatment at the hospital after being transported there by ambulance or that he lost time from work or any other activities.

Defendant's focus on these four factors, however, largely ignores our courts' specific instruction that this list of circumstances pertinent for jury consideration is not an exhaustive one. Even assuming *arguendo* that transportation of a shooting victim to the hospital by ambulance is not sufficient to show "hospitalization," there was substantial "evidence of physical or bodily injury to the victim," Jaquan. Testimony at trial showed that Defendant shot Jaquan with a shotgun, resulting in injuries to the front of Jaquan's calf, and that the victim had eighteen to twenty pellets in his leg, which did not fully "work themselves out" of Jaquan's body for six months. Shawntana testified that it looked like Jaquan had holes in his leg "from the ankle on up," and Serlick observed blood on Jaquan's leg and noted that his gunshot wounds looked like "little holes from birdshot from a shotgun." We hold this constituted substantial evidence not only that Jaquan sustained bodily injury but also that his gunshot wounds were serious; thus, the question of the nature of these injuries was properly submitted to the jury.

[2] Defendant also argues that the trial court erred as a matter of law in failing to define "serious injury" in its jury instructions, as requested by Defendant and agreed to during the charge conference. We disagree.

Although the trial judge may have agreed to give the North Carolina Pattern Jury Instruction 120.12, defining "serious injury" as an injury that "causes great pain and suffering," N.C.P.I. Crim. 120.12 (1998), the omission thereof during his charge to the jury was not error. The trial court's instruction to the jury on the charge of assault with a deadly weapon with intent to kill inflicting serious injury tracked the North Carolina Pattern Jury Instruction on that offense. *See* N.C.P.I. Crim. 208.15 (2008). While this pattern instruction includes a footnote that suggests a trial court *may* define serious injury as one that causes great pain and suffering, *see id.* at n.4, our courts have also chosen not to narrowly define "serious injury" in the context of assaults, as explained above. Likewise, the trial court was

not required to define the term as requested by Defendant and, accordingly, committed no error in omitting to do so.

## II.

**[3]** Defendant argues that the trial court erred as a matter of law in its instructions to the jury on the count of discharging a weapon into a moving vehicle. We disagree.

Defendant was charged with discharging a firearm into a conveyance in motion in violation of N.C. Gen. Stat. § 14-34.1(b), which makes it a Class D felony for any person to "willfully or wantonly discharge[] a weapon . . . into any occupied vehicle . . . or other conveyance that is in operation." N.C. Gen. Stat. § 14-34.1(b) (2009); *see also State v. Rambert,* 341 N.C. 173, 175, 459 S.E.2d 510, 512 (1995) (noting that the elements of the more general offense of discharging a firearm into occupied property are "(1) willfully and wantonly discharging (2) a firearm (3) into property (4) while it is occupied"). As interpreted by our Supreme Court,

> a person is guilty of the felony created by G.S. 14-34.1 if he intentionally, without legal justification or excuse, discharges a firearm into an occupied [vehicle] with knowledge that the [vehicle] is then occupied by one or more persons or when he has reasonable grounds to believe that the [vehicle] might be occupied by one or more persons.

*State v. James,* 342 N.C. 589, 596, 466 S.E.2d 710, 715 (1996) (citation omitted). Moreover, "[d]ischarging a firearm into a vehicle does not require that the State prove any specific intent [to shoot into the vehicle] but only that the defendant perform the act which is forbidden by statute. It is a general intent crime." *State v. Jones,* 339 N.C. 114, 148, 451 S.E.2d 826, 844 (1994). This Court has further explained:

> There is no requirement that the defendant have a specific intent to fire into the occupied building, only that he . . . (1) intentionally discharged the firearm at the occupied building with the bullet(s) entering the occupied building, or (2) intentionally discharged the firearm at a person with the bullet(s) entering an occupied building.

*State v. Byrd,* 132 N.C. App. 220, 222, 510 S.E.2d 410, 412 (1999) (internal citations omitted).

Defendant argues that the trial court's instructions on this charge incorrectly stated the requisite mental intent, thereby reducing the

State's burden of proof. Specifically, Defendant challenges the portion of the charge instructing the jury that in order to convict him of "discharging a firearm into an occupied vehicle, to wit, a school bus," it must first find "that the defendant willfully or wantonly, that is intentionally, with knowledge or reasonable grounds to believe the act would endanger the life or safety of the others, discharg[ed] the firearm into the school bus." Defendant also argues that the portion of the mandate stating that to support a guilty verdict, Defendant must have, in part, "willfully and wantonly discharged a firearm into a school bus," constituted an inaccurate statement on intent. He contends that the trial court varied from the pattern jury instruction in equating "willful or wanton" with "intentional" during the substantive charge and omitting "intentionally" altogether from the mandate. Defendant alleges that his constitutional due process rights were thus violated because the trial court's instructions allowed the jury to convict him "on willful or wanton conduct, and thereby reduced the State's burden of proof to prove intentionally beyond a reasonable doubt." *See In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, —— (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

We first note that, while the use of pattern jury instructions is encouraged, it is not required, and "[f]ailure to follow the pattern instructions does not automatically result in error" because we do not require adherence to " 'any particular form,' as long as the [trial court's] instruction adequately explains each essential element of an offense." *State v. Bunch*, 363 N.C. 841, 846, 689 S.E.2d 866, 870 (2010) (citations omitted).

Second, it is Defendant, not the trial court, who misquotes the pattern instructions the trial court agreed to give or, perhaps, overlooks the most recent version thereof. Defendant argues in his brief that the appropriate pattern jury instruction describes the relevant mental state as "willfully or wantonly *and* intentionally." However, the trial court proposed giving pattern jury instruction 208.90D, entitled "Discharging a Firearm Into Occupied Vehicle in Operation" and referencing N.C. Gen. Stat. § 14-34.1(b). The transcript reflects not only that the trial court did indeed give the instruction proposed at the charge conference but also that the portion of the instruction as given which Defendant now seeks to challenge was an exact recitation of the language appearing in N.C.P.I. Crim. 208.90D. The instruction provides that among the four things the State must prove beyond a reasonable doubt,

First, that the defendant willfully or wantonly, *that is ·intentionally* with knowledge or a reasonable ground to believe that the act would endanger the rights or safety o[f] others, discharged a firearm into a [vehicle] [aircraft] [watercraft] [other conveyance (*describe conveyance*)] . . . .

N.C.P.I. Crim. 208.90D (2009) (emphasis added). While the record does not contain copies of which instructions were actually submitted during the charge conference, and the pattern jury instruction at issue is dated June 2009-suggesting that Defendant may be relying on an earlier version-trial in this matter commenced in early 2010, and it is clear that the trial court instructed the jury in accordance with the pattern instruction in effect at that time. Thus, Defendant's contention, focused on an alleged variance from the pattern jury instruction by the trial court, is mistaken.

In addition to the trial court's adherence to N.C.P.I. 208.90D, the challenged instructions constitute an entirely correct recitation of the law. Thus, the trial court did not omit any element required by N.C. Gen. Stat. § 14-34.1(b) or any fact necessary to constitute the crime proscribed thereunder, as Defendant claims. In construing the mental state required by § 14-34.1, our Supreme Court clarified that "the words 'wilful' and 'wanton' refer to elements of a single crime," where:

[w]ilful as used in criminal statutes means the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of law. Wantonness . . . connotes intentional wrongdoing. . . . Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others.

*State v. Williams*, 284 N.C. 67, 72-73, 199 S.E.2d 409, 412 (1973) (internal quotation marks and citations omitted). The Court noted that the elements of a willful act and a wanton one under § 14-34.1 "are substantially the same" such that any "attempt to draw a sharp line between [them]" would be an exercise in futility. *Id.* at 73, 199 S.E.2d at 412. Interpreting the statute in accordance with this observation, the Court held that § 14-34.1 criminalizes "intentionally, without legal justification or excuse, discharg[ing] a firearm into an occupied [vehicle] with knowledge that the [vehicle] is then occupied by one or more persons or when he has reasonable grounds to believe that the [vehicle] might be occupied by one or more persons." *Id.* (emphasis omitted). Thus, the phrase, "that is intentionally, with knowledge or reasonable grounds to believe the act would endanger

the life or safety of the others," which the trial court appended to the requirement of "willfully and wantonly" in its instructions mirrors the definition of "wilful and wanton" provided in *Williams*. Accordingly, an intentional action (e.g., *intentionally* discharging a firearm rather than pulling the trigger by mistake) performed with the knowledge or reasonable grounds to believe the act would endanger the life or safety of others is indeed willful and wanton conduct.

Defendant himself notes in his brief that "[j]urors depend on the trial judge to accurately instruct them as to legal meanings" of terms such as "willfully and wantonly" and "intentionally." This the trial court did in its instructions, which were entirely consistent with the pattern jury instruction, completely accurate, and left out no fact necessary to constitute the crime of discharging a firearm into a moving vehicle. In any event, Defendant misapprehends the law in his argument that the trial court's instructions relieved the State from having to prove the "intentionally" element separately. He contends that even though he might have "acted willfully when he fired the shotgun and he may have acted wantonly when he fired the shotgun in that situation, . . . he did not intentionally shoot the school bus." As stated above, however, § 14-34.1 does not require that a defendant specifically intend to shoot into the vehicle because that result need only be the product of a general intent-one satisfied by Defendant's admittedly intentional firing of the shotgun under such circumstances where he had reason to believe the school bus that he ended up shooting seven to eight times was occupied. Accordingly, where there is no evidence that Defendant pulled the trigger multiple times by mistake and he acknowledges that the evidence reasonably shows he "acted willfully when he fired," he could show no prejudice even if the trial court's instruction were erroneous. Thus, we overrule this argument.

III.

[4] Defendant argues that he is entitled to a new sentencing hearing because the trial court erred in assigning a criminal history point based on the unsupported finding that Defendant was on probation at the time he committed these offenses. However, because Defendant would have had a Prior Record Level of II with or without the one point added for committing the offenses while on probation and he was sentenced in the presumptive range, he is not entitled to appeal this sentencing issue as a matter of right:

A defendant who has been found guilty . . . is entitled to appeal as a matter of right the issue of whether his or her sentence is sup-

ported by evidence introduced at the trial and sentencing hearing *only if* the minimum sentence of imprisonment does not fall within the presumptive range for the defendant's prior record or conviction level and class of offense. Otherwise, the defendant is not entitled to appeal this issue as a matter of right but may petition the appellate division for review of this issue by writ of certiorari.

N.C. Gen. Stat. § 15A-1444(a1) (2009) (emphasis added).

Defendant was assigned one record point for a prior class A1 or 1 misdemeanor conviction and one point for committing the offenses while on supervised or unsupervised probation, for a total of two points. Two points corresponds with a prior record level of II, but even if the one point for having committed the offenses while on probation were removed, leaving one prior record point, Defendant would still have had a prior record level of II pursuant to the statute in effect at the time of the offenses in 2007. *See* N.C. Gen. Stat. § 15A-1340.14(c)(2) (2007).[1] Moreover, Defendant does not argue that he was sentenced according to the wrong record level. Thus, he cannot challenge the sufficiency of the evidence to support his sentence as a matter of right on appeal, and where Defendant "has not filed a petition for writ of *certiorari* seeking review of this issue, it is not properly before this Court." *State v. Hill*, 179 N.C. App. 1, 26, 632 S.E.2d 777, 792 (2006). Thus, we do not consider Defendant's final argument and conclude that Defendant had a fair trial free from prejudicial error.

No Error.

Judges BRYANT and STROUD concur.

---

1. While this statute has since been rewritten such that one point now yields a prior record level of I, the amendment applies only to offenses committed on or after 1 December 2009. *See* 2009 N.C. Sess. Laws ch. 555, §§ 1, 3. Accordingly, the prior version of N.C. Gen. Stat. § 15A-1340.14(c) governs this case, as Defendant committed the offenses upon which judgment was entered prior to the effective date of this enactment.