An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e    P r o c e d u r e .

NO. COA13-1255

NORTH CAROLINA COURT OF APPEALS

Filed:  17 June 2014

STATE OF NORTH CAROLINA

v.                                Wayne County
                                  No. 11 CRS 55895

SHIYON KANIQUE WOOTEN


Appeal by defendant from judgment entered 25 June 2013 by Judge Wayland J. Sermons, Jr. in Wayne County Superior Court.  Heard in the Court of Appeals 19 March 2014.

> *Roy Cooper, Attorney General, by Narcisa Woods, Assistant Attorney General, for the State.*
>
> *James W. Carter for defendant-appellant.*


DAVIS, Judge.


Defendant Shiyon Kanique Wooten ("Defendant") appeals from her conviction for assault with a deadly weapon inflicting serious injury.  On appeal, she contends that the trial court erred in (1) denying her motion to dismiss; and (2) failing to

instruct the jury on self-defense. After careful review, we conclude that Defendant received a fair trial free from error.

**Factual Background**

The State presented evidence at trial tending to establish the following facts: On 17 November 2011, Defendant and Loreal Dungee ("Ms. Dungee") got into an argument near the intersection of Beech and Daisy Streets in Goldsboro, North Carolina. The quarrel occurred after Ms. Dungee asked Defendant's boyfriend, Chris Bell, if she could use his phone. Ultimately, Defendant and Ms. Dungee decided to fight. Defendant obtained a kitchen knife with a four- to five-inch blade from her home and then returned outside.

Several family members, friends, and other onlookers had assembled in order to witness the fight, including Reginald Fields ("Mr. Fields"), Ms. Dungee's boyfriend. As the two women approached each other, Defendant pulled out her knife from her back pocket. Ms. Dungee, upon seeing the knife, turned and began running away from Defendant. Defendant chased Ms. Dungee for roughly half a block at which point Ms. Dungee fell. Defendant then repeatedly stabbed Ms. Dungee while she was lying on the ground. Ms. Dungee suffered wounds in both thighs and below her shoulder blade.

Emergency medical personnel were called, and Ms. Dungee was transported to Wayne Memorial Hospital by ambulance. At the

hospital, Ms. Dungee was treated by Dr. Stephen Moye ("Dr. Moye"). Dr. Moye testified at trial that he closed Ms. Dungee's stab wounds with seventeen staples and numerous sutures and prescribed her antibiotics as well as medication for pain and anxiety.

Officer Edmund Gillette ("Officer Gillette") of the Goldsboro Police Department was dispatched to the scene of the crime shortly after the stabbing occurred. Officer Gillette interviewed Defendant, who admitted that she and Ms. Dungee had fought and that she had stabbed Ms. Dungee. While Defendant told Officer Gillette that Ms. Dungee had been armed with a gun at the time Defendant stabbed her, Defendant could not offer any description of the gun. Nor was any gun recovered at the scene.

On 28 November 2011, Ms. Dungee saw Dr. Wendy Cipriani ("Dr. Cipriani") for removal of the 17 staples she had received. Dr. Cipriani testified that Ms. Dungee had developed cellulitis — indicating that her wounds had become infected. Dr. Cipriani prescribed Keflex, an antibiotic, for the infection, Hydrocodone for pain, and Xanax for anxiety.

Defendant testified in her own defense at trial. She stated that when she came back outside after arming herself with a knife from her kitchen, she saw Mr. Fields hand Ms. Dungee a gun. Defendant claimed that, for this reason, she believed that Ms. Dungee was about to harm her. She explained that "before I

gave her time to do what she was going to do to me, I ran her down."

On 4 February 2013, Defendant was indicted on one count of assault with a deadly weapon inflicting serious injury. A jury trial was held in Wayne County Superior Court on 24 June 2013. Defendant moved to dismiss the charge against her at the close of the State's evidence and at the close of all the evidence. The trial court denied both of her motions. During the charge conference, Defendant requested a jury instruction on self-defense. The trial court denied this request.

Defendant was convicted of assault with a deadly weapon inflicting serious injury. The trial court sentenced Defendant to 20-33 months imprisonment, suspended the sentence, and placed Defendant on supervised probation for 24 months. The court ordered Defendant to serve an active term of five months imprisonment as special probation pursuant to N.C. Gen. Stat. § 15A-1351. Defendant gave notice of appeal in open court.

## Analysis

### I. Denial of Motion to Dismiss

Defendant's first argument is that the trial court erred in denying her motion to dismiss on the theory that the State did not provide sufficient evidence that a serious injury was suffered by Ms. Dungee. We disagree.

A trial court's denial of a defendant's motion to dismiss is reviewed *de novo*. *State v. Smith,* 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). On appeal, this Court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator . . . ." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation omitted), *cert. denied*, 531 U.S. 890, 148 L.Ed.2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). Evidence must be viewed in the light most favorable to the State with every reasonable inference drawn in the State's favor. *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L.Ed.2d 818 (1995).

In order to survive a defendant's motion to dismiss a charge of assault with a deadly weapon inflicting serious injury, the State must produce substantial evidence of each of the elements of that offense. The statute codifying the crime of assault with a deadly weapon inflicting serious injury is N.C. Gen. Stat. § 14-32(b), which provides that "[a]ny person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon." N.C. Gen.

Stat. § 14-32(b) (2013). "The elements of a charge under G.S. § 14-32(b) are (1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Ryder*, 196 N.C. App. 56, 66, 674 S.E.2d 805, 812 (2009) (citation and quotation marks omitted).

Defendant challenges the sufficiency of the State's evidence regarding the third element of the offense, contending that the State failed to introduce sufficient evidence to show that Defendant inflicted serious injury on Ms. Dungee.

> "Serious injury" as employed in G.S. 14-32(b) means physical or bodily injury resulting from an assault with a deadly weapon. The injury must be serious, but evidence of hospitalization is not required. The question of whether a serious injury has occurred is determined by the facts of each case and is a jury question.

*State v. Rotenberry*, 54 N.C. App. 504, 511, 284 S.E.2d 197, 201 (1981), *cert. denied*, 305 N.C. 306, 290 S.E.2d 705 (1982). A non-exhaustive list of factors for a jury to consider regarding whether a serious injury has actually occurred for purposes of N.C. Gen. Stat. § 14-32(b) was set out by this Court in *State v. McLean*, 211 N.C. App. 321, 712 S.E.2d 271 (2011):

> Our Supreme Court has not defined serious injury for purposes of assault prosecutions, other than stating that the injury must be serious but it must fall short of causing death and that further definition seems neither wise nor desirable. However, several relevant factors that may guide the determination of whether serious

> injury has been inflicted, includ[e], but [are] not limited to: (1) pain and suffering; (2) loss of blood; (3) hospitalization; and (4) time lost from work. Notably, this Court has indicated that competent evidence on any one of these factors is sufficient in itself to constitute substantial evidence of serious injury.

*Id*. at 325, 712 S.E.2d at 275 (internal citations, quotation marks, and brackets omitted).

Our appellate courts have recognized that a jury question will typically exist on this issue in cases where a victim is injured as a result of an assault with a deadly weapon. *See State v. Alexander*, 337 N.C. 182, 189, 446 S.E.2d 83, 87 (1994) (holding that "[c]ases that have addressed the issue of the sufficiency of evidence of serious injury appear to stand for the proposition that as long as the State presents evidence that the victim sustained a physical injury as a result of an assault by the defendant, it is for the jury to determine the question of whether the injury was serious").

At trial, Defendant admitted to stabbing Ms. Dungee multiple times. It is undisputed that as a result of the stab wounds she sustained during this incident, Ms. Dungee was taken by ambulance to the hospital. Evidence was presented that she was bleeding from her wounds, and Dr. Moye testified that she received 17 staples and numerous sutures. Dr. Moye also prescribed Ms. Dungee antibiotics, pain medication, and anxiety

medication in connection with her injury. Ms. Dungee missed approximately one week of work after being released from the hospital. In addition, Dr. Cipriani testified that when Ms. Dungee came to her office to have the staples removed, she had developed an infection around her wounds requiring additional treatment.

We are satisfied that this evidence was sufficient to raise a factual issue for resolution by the jury as to whether Ms. Dungee suffered a serious injury for purposes of N.C. Gen. Stat. § 14-32(b). Consequently, the trial court did not err in denying Defendant's motion to dismiss.

## II. Refusal to Instruct Jury on Self-Defense

Defendant's final argument challenges the trial court's denial of her request for a jury instruction on self-defense. This argument is also without merit.

"Our Court reviews a trial court's decisions regarding jury instructions *de novo*." *State v. Cruz*, 203 N.C. App. 230, 235, 691 S.E.2d 47, 50, *aff'd per curiam*, 364 N.C. 417, 700 S.E.2d 222 (2010). We have held that "[a] defendant is entitled to a jury instruction on self-defense when there is evidence from which the jury could infer that [s]he acted in self-defense." *State v. Allred*, 129 N.C. App. 232, 235, 498 S.E.2d 204, 206 (1998). "In determining whether the self-defense instruction should have been given, the facts are to be interpreted in the

light most favorable to the defendant." *State v. Moore*, 111 N.C. App. 649, 654, 432 S.E.2d 887, 889 (1993) (citation, quotation marks, and brackets omitted).

> There are two types of self-defense, perfect self-defense, which consists of the following four elements, and imperfect self-defense, which consists of only the first two elements:
>
>> (1) it appeared to defendant and he believed it to be necessary to kill the [victim] in order to save himself from death or great bodily harm; and
>>
>> (2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and
>>
>> (3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and
>>
>> (4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.
>
> Therefore, for defendant to be entitled to an instruction on self-defense, the following questions must be answered affirmatively: (1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in

> order to protect himself from death or great
> bodily harm, and (2) if so, was that belief
> reasonable?

*State v. Meadows*, 158 N.C. App. 390, 401, 581 S.E.2d 472, 478 (internal citations and quotation marks omitted), *appeal dismissed and disc. review denied*, 357 N.C. 467, 586 S.E.2d 774 (2003).

In her brief, Defendant attempts to show her entitlement to a self-defense instruction by pointing to her own testimony that she saw Mr. Fields hand Ms. Dungee a gun. No corroborating evidence was offered to show that Ms. Dungee ever possessed a gun during this incident, and Defendant was unable to provide a description of the alleged gun to police officers during her questioning shortly after the incident. Mr. Fields testified at trial that he did not give Ms. Dungee a gun at any point during or immediately preceding the fight. Furthermore, no witnesses testified to seeing Ms. Dungee with a gun.

In *Meadows*, the defendant waited on his ex-girlfriend's porch with a gun drawn. *Id.* at 393, 581 S.E.2d at 474. The defendant testified that when he saw his ex-girlfriend and her date (the victim) approach, he walked up behind the victim and saw the victim "pulling from his crotch area" and that he "saw something shine." *Id.* at 402, 581 S.E.2d at 479. The defendant then proceeded to shoot the victim in the head. The defendant argued that based upon his testimony, the jury should have been

instructed on self-defense. *Id.*, at 401-02, 581 S.E.2d at 479. We rejected this argument, stating that

> where the record was totally void of any evidence supporting defendant's self-serving claim that he believed the other person was reaching for a weapon, the Court may hold defendant's belief was not objectively reasonable and that the trial court properly refused to instruct the jury on self-defense. Accordingly, under the facts of this case, we hold the trial court did not err in failing to instruct the jury on self-defense.

*Id.* at 402, 581 S.E.2d at 479 (citation and quotation marks omitted); *see also State v. Bush*, 307 N.C. 152, 159-60, 297 S.E.2d 563, 568-69 (1982) (holding that self-serving statements by defendant that he was "nervous" and "afraid" of victim before stabbing was not, without more, sufficient basis for jury instruction on self-defense).

Here, we believe the trial court properly denied Defendant's request for an instruction on self-defense. In addition to the absence of any evidence supporting her own assertion that she saw Mr. Fields hand Ms. Dungee a gun, the undisputed evidence showed that Defendant chased Ms. Dungee down after Ms. Dungee had abandoned the confrontation upon seeing Defendant brandish her knife. Indeed, Ms. Dungee began fleeing down the street and was chased by Defendant for approximately half a block before Defendant caught up with her and began stabbing her after Ms. Dungee had fallen to the ground. No

evidence was offered that Ms. Dungee was holding — or reaching for — a weapon at the time Defendant stabbed her.

We conclude that Defendant failed to demonstrate that she formed a reasonable belief that it was necessary for her to use deadly force against Ms. Dungee in order to protect herself from death or great bodily harm. Accordingly, the trial court did not err in denying Defendant's request for an instruction on self-defense.

## Conclusion

For the reasons stated above, we hold that Defendant received a fair trial free from error.

NO ERROR.

Judges ELMORE and McCULLOUGH concur.

Report per Rule 30(e).